Would the clerk call the next case, please? 314-474, a case of the state of Illinois, I believe, by Lora Durango Bailon v. Kareem Cobbins, appellant by Santiago Durango. Thank you. Mr. Durango, good afternoon. Good morning, Your Honors. Mr. Michael, my name is Santiago Durango. I'm an assistant appellate defender with the Office of the State Appellate Defender, and I represent the defendant appellant, Mr. Kareem Cobbins, in this appeal. May it please the Court, this appeal is from the dismissal of the defendant's post-conviction petition at the first stage. Today, I'll be asking the Court to remand this cause for second-stage proceedings on his petition because he stated the gist of a claim that his lawyer was ineffective in directing a verdict in his case. What happened in this case is that the defendant stabbed his wife and killed her. He admitted to killing his wife. Instead of negotiating a guilty plea with a sentencing concession based on this admission, the defense counsel raised an affirmative defense of insanity at the time of the offense and took the case to a stipulated bench trial on December 6th. He hired two experts to provide an opinion as to whether the defendant was insane at the time of the offense. Neither expert provided an opinion as to the defendant's state of mind when the murder occurred. The State hired its own expert and she provided an opinion that the defendant was sane at the time of the crime. Under these circumstances, the trial court had no choice but to find the defendant guilty of the murder. There was simply no evidence to support the affirmative defense. Thus, counsel raised an affirmative defense that he failed to support. The defendant appealed the guilty verdict and this court noticed an appeal that he had failed to present a defense and affirmed the conviction. He then filed a post-conviction petition that underlies this appeal. In part in that petition, he claimed that his lawyer had been ineffective in failing to obtain definitive opinions one way or the other as to whether he was sane or insane at the time of the murder. He further claimed that he was prejudiced by this admission by counsel because the verdict would have been different had there been an affirmative defense. In part in that petition, he claimed that his lawyer had been ineffective in failing to obtain definitive opinions one way or the other as to whether he was sane or insane at the time of the murder. He further claimed that he was prejudiced by this admission by counsel because the verdict would have been different had there been an affirmative defense. In part in that petition, he claimed that his lawyer had been ineffective in failing to obtain definitive opinions one way or the other as to whether he was sane or insane at the time of the murder. He further claimed that he was prejudiced by this admission by counsel because the verdict would have been different had there been an affirmative defense. The second expert in theory could have done it, very well-respected expert, Dr. Robert Hanlon, except that Dr. Hanlon examined the defendant for his current mental state. That was a mistake. He was supposed to examine the defendant for his mental state at the time of the crime, and his counsel failed to correct that mistake. Well, but don't you have to assume to get past the first stage that the counsel failed to call some expert who would have said at the time of the offense, your client was insane? In other words, how could you say, well, it seems to me the argument is, well, maybe if he had asked more, he could have found somebody. Well, that doesn't feed the bulldog of a post-conviction petition, does it? Well, if that was counsel's, if those were his findings, why take the case to stipulate a bench trial? He has an admission, take the admission, work out a guilty plea for a lesser sentence. If he has the expert opinion... Was there a lesser sentence offered? Well, I think it's generally understood, and I cited a case that guilty pleas favor leniency in sentencing. That's the purpose of plea negotiations is to attempt to, you're not going to plea to a higher sentence than what you could possibly get at a trial. Otherwise, we would never have pleas. This is a plea-based system that we have now in the criminal law. We want to encourage that, and the way to encourage that is by promoting sentencing concessions through a guilty plea. So, to answer your question, Justice Schmidt, if the situation was that defense counsel could not find an expert who would say that the defendant was insane at the time of the offense, he should have pled the defendant now because he had no affirmative defense. I can't recall. So, did the trial judge max him out? No. He received the 40-year sentence. That was not the max. I believe the max was 60 for his defense. Would your position be, and maybe this is your position, would it be stronger to say that he was ineffective for not realizing that the opinion he sought was not the opinion he was given because of an error in the time at which he was rendering a judgment of sanity? Yes, that was a mistake that occurred in this case that counsel should have realized was a mistake. So, he was ineffective in going forward without having an opinion as to the critical issue. Yes, that could be read into the claim. At this point, the claim needs to be liberally construed. It's a pro se claim. Yeah, because we're only at the first date. Exactly, and it's a very low standard that needs to be met, and it was met here through his allegation that counsel should have either, that he should have gotten an opinion one way or the other. If he couldn't find an expert, proceed to the guilty plea negotiations. If he found an expert, take it to the trial where there would have been conflicting evidence and it gave him a chance of a verdict that was favorable to him. Well, but even at the first stage, you've got to plead two things. Enough to show that counsel was ineffective, didn't meet the standard, and B, that I was prejudiced as a result of his ineffectiveness. Arguably on both fronts. Well, you've got to at least plead that you were, you know, show something out there, and if you'd have come in and said, look, expert, you know, doctor, whoever, if, you know, we've talked to that other expert that only gave the opinion as to his sanity at the time he interviewed him, and he said, gosh, if I'd have been asked to do it, I would have found that the guy was insane at the time of the murder, but nobody asked me that. But then you say, okay, now you've got something. But to say if you'd have gone out and asked more questions that he would have had a favorable, you know, opinion, it seems to me to be speculation on top of speculation on top of speculation, and even at the first stage of a post-conviction, that's not enough, is it? It is, Your Honor. The threshold is very, very low. The defendant does not need to state a complete claim. The claim you just described, I would say, would really be a claim on direct appeal by counsel who is familiar with the law, who understands what facts are important. We have a pro se defendant here. The standard is very lenient under Edwards. He doesn't have to state a full claim. He doesn't have to make legal arguments. He needs to put enough in the petition so that, liberally construed, he has stated a claim, and in this case, as a matter of law, his claim is not barred. How is this any different than, let's say, you got a shooting sometime, and so on a PC, the defendant argues, gee, my lawyer didn't interview everybody that was in the area, and if they had interviewed more people, I'm sure one of them would have said that I wasn't a shooter. And that's not going to get past the first stage, is it? Not that I've got a witness that says, yeah, I would have done it, but if he had asked more questions, he might have found somebody that said I wasn't a shooter if he had interviewed more people. You contacted two experts, correct, or alleged experts? Yes. And the first one said, was there any doubt that that first one focused on mental state at the time of the act? She realized that that was what she was being asked to do, but she was not given enough information for her to make that evaluation based on her expertise and the information she had. So there was an understanding that, of course, necessarily because the affirmative defense was insanity at the time of the offense, that that was a question that needed to be answered, and information, evidence needed to be provided as to that question in order to support the affirmative defense. So she understood that that was what was being sought, and counsel must have understood that because that's what he asked her. Well, back to my original question, that it's not whether you go out in search of an opinion that you're seeking, but that the ineffectiveness was you, counsel, retained two alleged experts. Yes. One was not definitive, but apparently focused on the affirmative defense, which was at the time of the act. Yes. But the other one did not. Did not, and was not corrected by counsel. That's your real claim of ineffectiveness. Yes, yes. And if Dr. Hanlon would have provided an opinion one way or the other, it follows the defendant's claim makes sense. Well, but what you just said was if that person would have rendered an opinion one way or the other, so if in a rendered opinion that your client was sane at the time of the murder, you've just shot yourself in the foot, and you've eliminated the insanity. Yes, that's fine, because then he can try and negotiate a plea with a sentence and concession. He was not given sufficient information to make. How much concession do you think the state's going to make on a case like this where we've got a woman with a knife in her chest and this guy saying he did it? I mean, he's not in a very strong bargaining position to negotiate a plea, is he? And you just shot the insanity defense, you know, in a fanny by getting an opinion that goes the wrong way, you know, that you don't want. And like I said, there's a lot of speculation here. Well, Your Honor, under that reasoning, there would never be any plea bargaining. If there are – for all defendants who are not raising an affirmative defense, there's going to be no sentencing concession. He was a 60-year man. How long do you think the state was going to go? They had a – it was clear as a bell that he committed this murder, right? So the question was, we're saying, so what is this – but usually the state does it because, well, they want to avoid trial for one reason or another because there's a downside for them. Where's the downside that would have encouraged the state to go below 40 years on a plea agreement? To avoid the inconvenience of trial, the calling of witnesses. There would have been numerous witnesses who would have had to testify in this case, the responding officers, the family members. You had forensics. The forensics. Now, I have a question along that line. Defense counsel obtained experts. Who had knowledge of those reports? I mean, the experts rendered an opinion. Who had knowledge of those reports? The first expert was given to second experts. No, no, no, no. I'm sorry. I mean, are we playing a poker game here is what I'm asking. I mean, when were the cards turned over that these experts – one said, I can't give a definitive answer at the time of the action, and the other one didn't give an opinion as to what the state was going to do. Before the stipulated bench trial. Who were they shared with? Well, they were shared with – the defense experts shared their own reports. Were they shared with the state? I'll try to just get to the conclusion. I do not know if they were shared with the state. Well, if they weren't shared with the state, you have bargaining power, don't you? Yes. Okay. It's poker then. Yeah, it is. You're right, Your Honor. So, Mr. Durango, is your position that when you have a claim of ineffective assistance of counsel, you state the gist of a claim if you can make an argument that the attorney didn't do something that they should have done, but that it isn't necessary for them to prove or not prove, presented just a claim with regard to prejudice? In this case, the prejudice prong is met on two fronts, Your Honor. I argue that prejudice did not need to be met in this case under chronic because the state's case was not meaningfully challenged. In fact, the actions taken by counsel made it easier for the state to prove its case. It channeled the disputes in the case into a question where the defendant did not have any evidence to back up his affirmative defense. On the facts of this case, what could the state have done to make it harder? Or what could the defendant have done to make it harder on the state? He could have gone to trial, Your Honor, and enforced the state to call the witnesses necessary to establish guilt beyond a reasonable doubt. And then your client could have gotten 60 instead of 40. Well, this and that would have been all right. As it now stands, he will be released when he's 71 years old, which exceeds the expected life expectancy of imprisoned defendants. On the other hand, he may have been willing to bargain to a prison term by just reducing the sentence to 10 or 15 years, where he would be released in his late 50s or early 60s and still have some hope of a few years outside of prison before he passes away. Your Honor, in light of the circumstances of this case, the defendant respectfully requests that this cause be remanded for second state proceedings because the trial court error in summarily dismissing his petition at the first stage. Thank you, Your Honor. Thank you. Mr. Michael D. Allen. Good afternoon. Good afternoon, Your Honors. Counsel, may it please the Court? Defendant's post-conviction petition was properly dismissed. I'll briefly discuss the facts here to correct the idea that Dr. Hanlon made a mistake. Dr. Hanlon didn't make a mistake. Originally, the defense was talking to Dr. Zoot. Dr. Zoot did interviews and testing and issued a report. The report, well, first, Dr. Zoot only examined for fitness. After the fitness evaluation came back from Dr. Zoot, defense counsel made clear that counsel also wanted the sanity evaluation. So then the sanity testing was done by Dr. Zoot. Dr. Zoot issues the report. The report says, I want a PET scan. I want some neuropsychological testing. I can't issue an opinion without this brain scan and this neuropsychological testing. So then Dr. Zoot testifies even in court saying, I think that if I got this further testing, I can come to an opinion on sanity. So then defense counsel makes sure that that extra testing is done. That's where Dr. Hanlon comes into play. Dr. Hanlon did the neuropsychological testing that was requested by Dr. Zoot. Also, a PET scan was done. So that's what Dr. Hanlon was hired for. Dr. Hanlon was hired because Dr. Zoot said if Dr. Zoot had that information, she'd be able to issue an opinion on sanity. Now, as it turned out, after Dr. Zoot reviewed Dr. Hanlon's report and reviewed the PET scan, Dr. Zoot said she still couldn't issue a conclusive opinion on sanity. But that's not for lack of counsel trying. Defense counsel took all the steps that could have been done to try to get Dr. Zoot to say that defendant wasn't sane at the time of the offense. But that's just not what happened. And regarding what the state knew and when, I believe that the state had Dr. Zoot and Dr. Hanlon's reports because I believe that Dr. Swarovski had discussed both of those reports. Those were both done before Dr. Swarovski did her report. So I believe that those reports were already out there. Now, this asks me procedurally to help me out here. Those reports are disclosed to whom in a normal proceeding? Or are they retained by defense counsel? In this case, I believe that the state would have been able to see them. That's how they were always discussed. Do you see why it makes a difference? Yes. Yes, if he could have discussed a third expert and had that lined up in the wings. No, if I'm defense counsel and I'm trying to plea bargain with you, and you're the prosecutor, I say I've got two reports. Yes. Yes, well, in this case, I think that... That render an opinion as to the state of mind and the sanity level. And I say nothing more. Yes, well, in this case, the state did have Dr. Zoot and Dr. Hanlon's reports, I believe, because Swarovski relied on them. Now, defendants... Well, in this case, the defense viewed those reports as being helpful to the defense because neither of those doctors testified that defendant was sane. So the defense actually used that as a strategy to say, look, this doctor thinks there's this kind of impairment. This doctor finds a functional disability. So in this case, they were tried to use to help the defense. Another problem in this case is that defendants' petition argued only that an opinion would have been favorable to him. In the actual post-conviction petition he filed, he argued that the expert, and he referred to just Dr. Hanlon and Dr. Zoot, that if one of them had issued an opinion, it would have improved the outcome of his trial. This is more than just inartful pleading regarding the possibility of could there have been a plea, could there not have been a plea. It's a totally different argument. Where defendants' petition never expressed an interest in pleading guilty or seeking an opinion that might have been that he was sane, and there's no evidence a plea was even offered or what it would have been, but instead defendants' petition repeatedly states that the outcome of his trial would have been effective and that this information would have been helpful to him, that's just a different ballgame than what's in the petition versus the appeal. Moreover, this argument on appeal here has to be that counsel on direct appeal was ineffective for failing to raise trial counsel having been ineffective for failing to get a second opinion, but that would have been entirely inconsistent with direct appellate counsel's argument. On direct appeal in this case, appellate counsel argued that the trial judge's finding of sanity was against the manifest weight of the evidence. So to turn around then and argue that trial counsel had conceded defendants' guilt would have been the polar opposite of what the argument was made. Also, there was no concession of guilt in this case by defendants' trial attorney. Defendants' attorney clearly presented a defense. Defendants' attorney cross-examined the Dr. Swarovski. Defendants' attorney presented evidence from lay witnesses, also presented the evidence of the reports of Dr. Hammond and Dr. Zoot. Defendants' attorney then used that information to try to argue that it didn't take an expert to find that defendant was insane and that relying on lay witness testimony and arguing that there was a lack of motive. Defendants' attorney also argued that Dr. Swarovski was biased. Defense counsel questioned Dr. Swarovski's credentials and argued that pieces of Dr. Zoot and Dr. Hammond's reports favored the defense. So defendants' attorney certainly didn't concede guilt in any way, and nor did defendants' attorney proceed to trial without there being a definite opinion on sanity. There was a definite opinion on sanity. That opinion was Dr. Swarovski's opinion, and that opinion was that he was sane at the time of the offense. And that doesn't mean there was no strategy or there wasn't an informed strategic decision. The informed strategic decision was to make the arguments again, trying to question Dr. Swarovski, trying to argue that the other experts had pieces of their reports that favored him. So it can't be said that he went to trial without having an opinion one way or the other, and there was an opinion one way or another. Another opinion could have just simply been that he was sane at the time of the offense. Is it a fair characterization that the opposing counsel gave of Dr. Hammond, that Dr. Hammond's opinions were only as to the present sanity of the defendant? Yes, Dr. Hammond was only asked to evaluate the present mental status of defendant. Dr. Zut was the expert that was asked to evaluate sanity at the time of the offense, and Dr. Zut had said that the type of evaluation that Hammond could provide would be able to help her come to a conclusion. Why would you want Dr. Zut to talk about your sanity at the present time, unless you're talking about fitness to stand trial? Well, Dr. Hammond did the neuropsychological testing at Dr. Zut's request, because Dr. Zut thought if there was something that could be revealed that was a problem with the brain, that maybe she'd be able to read back that that problem would have affected sanity at the time of the offense. So as far as the record goes, it's just because Dr. Zut thought it would help the sanity of the defendant. So really, Dr. Hammond is just a technician doing these scans for Dr. Zut? The PET scan was separate from Dr. Hammond. Dr. Hammond, I believe, did do interviews and a battery of neuropsychological tests, which is separate than evaluating for sanity. Dr. Zut testified that those tests would help her render an opinion on sanity, but ultimately she found that she couldn't. But nobody bothered to direct Dr. Hammond for an opinion as to the time of the incident? No one asked Dr. Hammond for an opinion on sanity. On this record, it's not even known if Dr. Hammond could give an opinion on sanity or what it would have been. So we don't know whether Hammond would have said... Well, we don't. That's speculation. It's a question of whether it was effective or ineffective to not have done that. To not have asked? Yes. Well, again, Hammond could have just come up with the opinion. Well, we don't know whether Hammond has the expertise needed to opine on sanity. We know that Dr. Zut does, and we know that Dr. Zut said that she didn't have the expertise needed to do the neuropsychological testing. So I don't know where the overlap is in their ability to issue opinions. If there are no further questions, the people would ask that this Court affirm the dismissal of defendants' post-conviction petition. Thank you, Your Honors. Mr. Durango, any rebuttal? Your Honors, if I heard this state correctly, they just conceded that there was no expert testimony to support the affirmative defense. Dr. Zut did not testify as to the affirmative defense, and Dr. Hammond also did not provide any useful testimony or opinions as to the affirmative defense. The state agrees that there was no evidence to support the affirmative defense in this case, as I understood their argument they just made to the Court. The state argues that arguing by appellate counsel that defense counsel was ineffective would have been contrary to the argument they did raise on appeal. Appellate counsel could have raised alternative arguments. Nothing prohibits appellate counsel from arguing, making one argument that is then contradicted by an alternative argument. So the defendant in this case in his petition did claim that his appellate counsel was ineffective for not raising the claim that he raised in his petition, and he has avoided forfeiture of the claim based on not arguing that appellate counsel was ineffective in not raising the claim. Justice Holbrooke, you're right in pointing out that Dr. Hammond was asked only to examine the defendant as to his current state. If the question that needs to be addressed is the defendant's state of mind at the time of the crime, why did counsel not find an expert or pay Dr. Hammond to provide an opinion as to his current state, which obviously did nothing to advance the affirmative defense in this case? Just in short, defense counsel did not do what he needed to do to support the affirmative defense in this case. If there was no affirmative defense, he should have pled the defendant out. If there was an affirmative defense, at that point they could have made an informed decision as to whether to proceed to trial, hold the dice in trial, or not. But because of trial counsel's strategy, if you can call it that, it never got to that point. There was no strategy in this case. The strategy amounted to a concession of guilt for the defendant. There was no defense. So because trial counsel's performance in this case was sufficient, and because the outcome of the case may have been different had he performed adequately, the defendant stated the gist of the claim in his petition, and the trial court erred in dismissing it. If he gives the claim, it's got to be more than it may have been different. It's got to be it likely would have been different, right? Arguably. Arguably, Your Honor. And the other factor that the court needs to look at... Was what I said was right, or arguably... Arguably it would have been different. Arguably different, yes. That's a very low threshold. The other way of looking at whether he stated a gist is to ask, is the state, is the claim not a good claim as a matter of law? Here the claim is good as a matter of law. It's an ineffective assistance of counsel claim. He's claiming his lawyer did not do things that he believes his lawyer should have done. Is the claim barred because it's delusional, factually speaking? And here the claim is not factually delusional. There are factual basis for the claim that he was not examined for fitness at the time of trial. And so that's not a delusional claim. Not at the time of the crime. I'm sorry, yes, at the time of the crime. Basically there is some fitness evidence there at the time of the trial to handle it, right? Yes, that's correct. But again, that did not go to the defense. No, that's correct. So for these reasons, the petition should not have been summarily dismissed at the first stage, and the defendant respectfully requests that this court reverse that decision and remand this cause for second stage proceedings. Thank you, Your Honor. Thank you, Mr. Durango. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand and briefly request for a moment of silence.